J-A30007-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ESTATE OF JOHN J. STRAHSMEIER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: JOHN T. STRAHSMEIER, EXECUTOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1162 WDA 2017 |

Appeal from the Order Entered July 11, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  6114 of 2008

| | | |
|---|---|---|
| IN RE: ESTATE OF JOHN J. STRAHSMEIER, DECEASED | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: ROSE M. REGAN AND LOIS A. PHILLIPS, CO-EXECUTRICES | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1163 WDA 2017 |

Appeal from the Order July 11, 2017
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s):  02-08-06114

BEFORE:   SHOGAN, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY SHOGAN, J.:                          FILED APRIL 10, 2019

Appellant, John T. Strahsmeier ("Strahsmeier"), filed the appeal docketed at 1162 WDA 2017.  His sisters, Rose M. Regan ("Regan") and Lois A. Phillips ("Phillips"), collectively ("the Sisters"), filed the appeal docketed at

_____
*   Retired Senior Judge assigned to the Superior Court.

1163 WDA 2017.[1]  Following our careful review and consideration, we affirm

both orders.

A previous panel of this Court summarized the "long and tortuous factual

and procedural history" of this case as follows:

> Decedent [John J. Strahsmeier] died on September 13, 2008, survived by his three children, John T. Strahsmeier, Regan and Phillips (collectively "children").
>
> Decedent executed his Will on June 6, 2003.  On February 13, 2006, Decedent established a money market checking account at First National Bank of Pennsylvania ("First National").  Decedent was the sole owner of this account.  On October 17, 2006, Decedent revised ownership, listing Regan as "ITF" (hereinafter "ITF Account").  At various times, other accounts owned by Decedent were opened and revised at First National.
>
> In May 2007, Decedent prepared binders (hereinafter "the binder") containing detailed descriptions and information as to his funeral, burial, assets, debts, accounts, and estate management. The binders were given to Regan, Phillips, Strahsmeier, and C. Donald Gates, Jr., Esquire.  All binders were updated regularly by Decedent.
>
> The binder directs that upon his death, Strahsmeier, Regan, and Phillips were to take the monies from the accounts they shared with Decedent and deposit them into an estate account. The Estate Account would, after payment of debts, be divided equally among the children.[8]  The ITF Account containing the majority of the assets of the Estate was to become the Estate Account.
>
> > [8] Because of an unpaid loan to Regan made by Decedent during his life, she was to receive $20,000 less from the balance of the Estate Account than Strahsmeier and Phillips.

_____

[1] We consolidated the appeals sua sponte on September 6, 2017.

Following Decedent's death, Regan and Phillips sought intestate probate averring they did not know if a valid Will was in existence. Letters of administration were issued to Regan and Phillips as co-administrators of the Estate on September 24, 2008. On October 3, 2008[,] Regan and Phillips, as co-administrators, filed a petition to show cause why Strahsmeier and his wife should not be directed to deliver Decedent's assets to the court.[10]

> [10] The [S]isters alleged Strahsmeier had removed assets from Decedent's safe deposit box pursuant to his powers as co-agent under the May 15, 2004 power of attorney ("POA").

On October 6, 2008, Strahsmeier presented to the court a petition to enter a photocopy of the Decedent's June 6, 2003 Will. Regan and Phillips immediately filed a caveat with the Register of Wills.

On October 16, 2008, Treasury Bill *H20 matured and $40,000 was electronically deposited into the ITF Account. Shortly thereafter, Regan withdrew the contents of that account, totaling $140,200.26.[2]

When on January 14, 2009, Strahsmeier presented for filing the original June 6, 2003 Will and the March 20, 2007 Codicil,[11] Regan and Phillips withdrew the caveat. Pursuant to the June 6, 2003 Will, Strahsmeier, Phillips, and Regan were appointed co-executors of the Estate.

> [11] Although Decedent prepared a Codicil to the Will dated March 20, 2007, it is not relevant for purposes herein. The Codicil directs where the three executors cannot all agree, then John T. Strahsmeier's decision will prevail. The trial court found "Strahsmeier has the authority to make the final decision if all three Co-Executors are unable to agree; it does not mean, 'majority rules,' as was posited by Regan and Phillips." Trial Court Opinion, July 1, 2011, at 3–4 ¶ 6. This issue was not appealed.

_____

[2] Elsewhere in the record, this amount is referred to as $149,200.26. See, e.g., Order, 7/1/11.

- 3 -

On June 23, 2009, Phillips filed an Inheritance Tax Form on behalf of the Estate. The tax form listed the ITF Account ($108,477.75) and Treasury Bill *H20 ($40,000) as assets of the Estate.

On May 12, 2010, the orphans' court directed Regan and Phillips[12] to file an Account for the Estate. Strahsmeier was required to cooperate fully in providing information they might need. Regan and Phillips filed, on June 15, 2010, a First and Final Account and Inventory. Strahsmeier filed objections as well as supplemental objections to both the Account and Inventory on July 27, 2010. Among the objections to the Inventory were those stating that the ITF Account ($108,477.75) and Treasury Bill *H20 ($40,000) were not listed as assets of the Estate. A prolonged and contentious period of discovery followed.

> [12] The order was so directed because they had served as co-administrators of the Estate from September 24, 2008[,] until January 14, 2009.

On December 3, 2010, Regan and Phillips filed an amended Inventory. An amended Account was filed on December 20, 2010. After further procedural posturing and filings, a hearing was finally held on May 12, 2011. The Honorable Lawrence J. O'Toole filed his memorandum opinion and order on July 1, 2011.[3] Regan and Phillips filed timely exceptions to the order.

In re Estate of Strahsmeier, 54 A.3d 359, 360–362 (Pa. Super. 2012) (some footnotes omitted).

On appeal to this Court in 2012, the Sisters contended the orphans' court erred in:

_____

[3] The July 1, 2011 order sustained objections and supplemental objections to Strahsmeier's Joint First and Final Account, sustained objections to Strahsmeier's Inventory, dismissed the Sisters' joint objections to Strahsmeier's Inventory, denied the Sisters' Motion for Summary Judgment, and directed Regan to deposit the sum of $149,200.26 into the estate account. Order, 7/1/11.

1) concluding Strahsmeier produced clear and convincing evidence to overcome the presumption the bank account was a Totten trust;[14] 2) concluding the account was a convenience account rather than a Totten trust; and 3) concluding the Treasury Bill (*H20) which matured on October 16, 2008, in the principal amount of $40,000, was the property of the Estate and not Regan.

> [14] . . . "A Totten trust allows the depositor to retain … complete control of the fund during his life and yet secure to the beneficiary any balance standing in the account at the death of the depositor." In re Rodger's Estate, 374 Pa. 246, 97 A.2d 789, 790 (1953).

Estate of Strahsmeier, 54 A.3d at 362. On September 7, 2012, this Court determined that the trial court correctly found that the $40,000 treasury bill belonged to the Estate, not to Regan, that co-executor Strahsmeier proved that Decedent intended that the ITF Account was not Regan's sole property after her father's death, and therefore, the money from the ITF Account must be returned to the Estate. Thus, this Court concluded that Regan was to return the monies she had unilaterally withdrawn, to the ITF Account.[4] Estate of Strahsmeier, 54 A.3d at 363–368. Our Supreme Court denied further review. In re Estate of John J. Strahsmeier, 69 A.3d 603 (Pa. 2013).

On November 18, 2014, Strahsmeier filed a motion for partial summary judgment, which the trial court granted on February 12, 2015. The February 12, 2015 order, inter alia, confirmed Strahsmeier's account, found that the

_____

[4] Regan did not return the funds to the estate. She filed for bankruptcy in Colorado, claiming the funds were her own. Ultimately, the Bankruptcy Court deferred to the Pennsylvania Courts to determine the disposition of the funds. Motion for Partial Summary Judgment, 11/18/14, at Exhibit A.

Sisters "acted . . . in a dilatory, obdurate and vexatious manner," removed the Sisters both as co-executors of the Estate and from the Estate checking account, authorized payment of previously awarded legal fees to Robert J. Amelio, agent for the Estate, authorized payment of an executor's commission solely to Strahsmeier, denied reimbursement of certain other creditor's claims against the Estate, and imposed a surcharge upon the Sisters. Order, 2/12/15.

The Sisters filed exceptions in the trial court on March 4, 2015. While the exceptions were pending in the trial court, the Sisters appealed the February 12, 2015 order, which was docketed at 402 WDA 2015. Strahsmeier filed a motion to quash the appeal, which we granted on April 30, 2015.[5]

On June 12, 2015, the Sisters filed a motion for summary judgment. Strahsmeier filed a court-ordered response on July 15, 2015. In new matter, Strahsmeier requested punitive damages. By order filed July 13, 2017, the trial court, inter alia, denied the Sisters' motion for summary judgment and Strahsmeier's request for punitive damages. On August 9, 2017, Strahsmeier

_____

[5] Although the order quashing the appeal does not so state, Strahsmeier's motion to quash was based on former Pa.O.C.R. 7.1(a), effective January 1, 2001, until September 1, 2016. Pa.R.A.P. 8.1 (Explanatory Comment) (explaining former exception practice was discontinued as of September 1, 2016). Former Rule 7.1 precluded the filing of an appeal "of an order, decree, or adjudication which would become a final appealable order under Pa.R.A.P. 341(b) or Pa.R.A.P. 342 following disposition of the exceptions. If exceptions are filed, no appeal shall be filed until the disposition of exceptions. . . ." Former Pa.O.C.R. 7.1(a) (emphasis added). The Sisters did not respond to the motion to quash.

filed the instant notice of appeal docketed at 1162 WDA 2017, and the Sisters

filed their notice of appeal docketed at 1163 WDA 2017. Strahsmeier filed a

Pa.R.A.P. 1925(b) statement on August 30, 2017, wherein he challenged the

trial court's refusal to award punitive damages. The Sisters filed their concise

statement on September 8, 2017, wherein they raised twenty-one issues

purportedly related to the trial court's denial of their June 12, 2015 motion for

summary judgment.

The trial court addressed Strahsmeier's appeal in a one paragraph

explanation:

> The Executor has filed an appeal from this [c]ourt's denial
> of his request for punitive damages. In Friedman Estate, 1 Fid.
> Rep. 2d 60, 68 (Allegheny County O.C. 1980 (en banc), affirmed
> on other grounds, 453 A.2d 651 (Pa. Super. 1982)[,] five judges
> from [the Superior] Court held that punitive damages for losses
> due to the mismanagement of a trust are not a viable remedy in
> Orphans' Court. This [c]ourt has no power to decline to follow, or
> authority to overrule, the en banc Friedman decision because the
> holding in Friedman is precedent for this [c]ourt. Yudacufski v.
> D.O.T., 454 A.2d 923, 926 (Pa. 1982).

Trial Court Opinion, 9/18/17, at 1. Without addressing any issues identified

by the Sisters in their Rule 1925 statement, the trial court concluded:

> "[Counsel for Regan and Phillips] filed a Concise Statement of
> Matters Complained of on Appeal that raised twenty-one (21)
> separate issues. None of the issues raised, however, deal with
> the appealed Order. Therefore, all issue[s] raised are without
> merit.

Trial Court Opinion, 9/18/17, at 1.

In considering both appeals, our standard of review of the orphans'

court's findings is deferential.

> When reviewing a decree entered by the [o]rphans'
> [c]ourt, this Court must determine whether the record
> is free from legal error and the court's factual findings
> are supported by the evidence. Because the
> [o]rphans' [c]ourt sits as the fact-finder, it determines
> the credibility of the witnesses and, on review, we will
> not reverse its credibility determinations absent an
> abuse of that discretion.
>
> However, we are not constrained to give the same deference
> to any resulting legal conclusions.

The [o]rphans' [c]ourt decision will not be reversed unless there
has been an abuse of discretion or a fundamental error in applying
the correct principles of law.

This Court's standard of review of questions of law is de novo, and
the scope of review is plenary, as we may review the entire record
in making our determination. When we review questions of law,
our standard of review is limited to determining whether the trial
court committed an error of law.

In re Fiedler, 132 A.3d 1010, 1018 (Pa. Super. 2016) (en banc) (internal

citations and quotation marks omitted).

For ease of discussion, we address the Sisters' appeal first. The Sisters

raise the following issues on appeal:

> I. Did the lower court err and commit an abuse of discretion
> and/or error of law in granting [Strahsmeier's] motion for partial
> summary judgment as there were genuine issues of material fact
> as to whether [Phillips] and/or [Regan] should be removed as co-
> executrices of the estate?
>
> II. Did the lower court err and commit an abuse of discretion
> and/or error of law in granting [Strahsmeier's] motion for partial
> summary judgment to the extent that the order granting that
> motion accepted [Strahsmeirer's] estate accounting, which
> included payments to himself and to his attorney as well as other
> disbursements, without conducting an evidentiary hearing on the
> objections to the various restated accounts filed by [Strahsmeier]

and/or a hearing on the accounts filed by [Phillips] and [Regan] and the various objections thereto?

III. Did the lower court err and commit an abuse of discretion and/or error of law in granting [Strahsmeirer's] motion for partial summary judgment insofar as the order issued a surcharge against [Regan and Phillips], denied them reimbursement for estate expenses advanced, and denied them a distributive share of the estate, without conducting an evidentiary hearing?

IV. Did the lower court err and commit an abuse of discretion and/or error of law in denying [Strahsmeier's] request for punitive damages?[6]

The Sisters' Brief at 9–10.

We are constrained to find that the Sisters' issues in their appeal are waived.[7] The issues asserted in their appellate brief to this Court, indeed all of the claims delineated in the Sisters' Rule 1925(b) statement, relate to the February 12, 2015 trial court order. As noted supra, previously the Sisters erroneously appealed the February 12, 2015 order while their exceptions to that order were pending in the trial court. Former Pa.O.C.R. 7.1(a), which was effective until September 1, 2016, precluded the filing of an appeal until such time as exceptions were adjudicated. See In re Estate of Krasinski,

_____

[6] Because Issue IV is the Sisters' response to the issue raised in Strahsmeier's appeal, it is addressed infra.

[7] On September 21, 2017, Strahsmeier filed a motion to quash the Sisters' appeal. Strahsmeier filed the motion after the Sisters filed their notice of appeal but before the case was assigned to a merits panel. This Court denied the motion without prejudice on November 3, 2017, to be raised either in the appellate brief or in a new application to the merits panel. Strahsmeier has raised the dismissal of the Sisters' appeal in his "Designated Appellant's Second Brief."

- 9 -

188 A.3d 461, 466 n.1 (Pa. Super. 2018) (Pursuant to former Pa.O.C.R. 7.1(a), when exceptions are filed to an order, decree, or adjudication that would become a final, appealable order under Pa.R.A.P. 341 or 342, "no appeal shall be filed until the disposition of exceptions."). For this reason, this Court quashed that appeal on April 30, 2015.

Subsequently, because the trial court never ruled on the Sisters' exceptions to the February 12, 2015 order, the exceptions were deemed denied by operation of law on July 3, 2015, the 121st day from the date of their filing. Former Pa.O.C.R. 7.1(f).[8] Once the exceptions were deemed denied, the February 12, 2015 order was final and appealable.[9] In re Wilton, 921 A.2d 509, 512 n.1 (Pa. Super. 2007); see also In re Estate of Cherwinski, 856 A.2d 165, 167 (Pa. Super. 2004) ("Under Pa.R.A.P. 341, an order is final if it disposes of all claims and all parties. In a decedent's estate, generally the confirmation of the final account of the personal representative

_____

[8] Former Pa.O.C.R. 7.1(f) stated, in pertinent part: "If the Orphans' Court fails to decide the exceptions within . . . 120 days, the exceptions shall be deemed denied by operation of law on the . . . 121st day . . . . The appeal period shall begin to run as of the . . . 121st day."

[9] There was no requirement to have the orphans' court declare the February 12, 2015 order a final order. See In re Estate of Mumma, 125 A.3d 1205, 1212 (Pa. Super. 2012) (Pa.R.A.P. 342(a), which authorizes an appeal taken as of right from an order confirming an account or authorizing or directing a distribution from an estate, "permits an aggrieved party to take an immediate appeal of all categories of orders therein without any need to obtain a declaration from the court that the order is 'final' in nature.").

represents the final order, subject to exceptions being filed and disposed of by the court."); In re Estate of Habazin, 679 A.2d 1293, 1295 (Pa. Super. 1996) ("[I]n a decedent's estate, the confirmation of the final account of the personal representative represents the final order, subject to exceptions being filed and disposed of by the court."). The Sisters never appealed the February 12, 2015 order once their exceptions were deemed denied by operation of law.

By failing to appeal the February 12, 2015 order, the Sisters have waived all of the objections they had raised in their exceptions to it. See Pa.R.A.P. 342(c) ("Failure to appeal an order that is immediately appealable under paragraphs (a)(1)–(7) of this rule shall constitute a waiver of all objections to such order and such objections may not be raised in any subsequent appeal."). Therefore, because all issues are waived in the appeal docketed at 1163 WDA 2017, the order is affirmed.[10]

---

[10] In U.S. Bank v. Hua, 193 A.3d 994 (Pa. Super. 2018), this Court recently reiterated: "The Pennsylvania Supreme Court has held that "an appeal is 'quashed' when the court lacks jurisdiction over the appeal in the first instance. When the appellant has failed to preserve issues for appeal, [as here,] the issues are waived, and the lower court's order is more properly 'affirmed.'" Id. at 999 n.3 (quoting In re K.L.S., 594 Pa. 194, 934 A.2d 1244, 1246 n.3 (2007) (citations omitted)).

We now turn to Strahsmeier's appeal.[11] Strahsmeier contends the trial court should have addressed his request for punitive damages. He asserts the facts are not in dispute. In support he cites the trial court's factual findings that evidence of Decedent's intent was overwhelming to it and to this Court, extraordinary. Strahsmeier's Brief at 27. Strahsmeier posits:

> It is also clear that the facts prove [the Sisters] acted to subvert [Decedent's] intent[]. That they would do so is indicative of their reckless disregard for the truth, their bad faith in the exercise of their fiduciary duties as co–executor's of their father's estate, and their ruthlessness as daughte[rs'] who knew of their father's wishes, but who would embark upon a course to deny their brother his rightful share. The[ir] acts were malicious. That they have persisted over the course of more than 9 years since the death of [Decedent], is itself evidence of their dilatory, obdurate and vexatious behavior.

Strahsmeier's Brief at 27. He suggests that the Sisters' failure to respond to his Motion for Summary Judgment confirms that the facts therein are conclusive. Id. at 28.

Strahsmeier cites cases that permitted punitive damages in tort actions. Strahsmeier's Brief at 28. He contends the Sisters' conduct was flagrant and abusive, and they attempted to defraud him of his rightful share of their

_____

[11] The July 11, 2017 order appealed by Strahsmeier was a final order as it disposed of all of the issues remaining before the trial court. The order dismissed the claim of Robert J. Tate, Esquire, denied the motion for summary judgment filed by the Sisters, and denied Strahsmeier's request for punitive damages. Pa.R.A.P. 341(b)(1) (A final order is one that "disposes of all claims and of all parties.").

father's estate. Id. at 29. Strahsmeier avers that the Sisters' conduct merits punishment. Id. at 30.

Strahsmeier acknowledges that Pennsylvania courts have not recognized punitive damages as an appropriate remedy in orphans' court proceedings. Strahsmeier's Brief at 33. Rather, he argues that relevant precedent "should be changed." Id. at 30. He suggests that there is "'no good reason' why a claim for punitive damages could not be 'appropriate against a fiduciary in a proper case in an Orphans' Court proceeding than in any other.'" Id. at 32.

The Sisters maintain they had a viable legal and factual argument regarding the ITF account. Therefore, they assert that their defense did not constitute bad faith or rise to the level of outrageous conduct or evil motive. The Sisters' Brief at 33–34. They aver that the trial court's conclusion in the February 12, 2015 order, that the Sisters acted in bad faith or in a dilatory, obdurate, and vexatious manner, was made without the benefit of a hearing on that issue generally, or on the issue of Strahsmeier's entitlement to punitive damages. They make no responsive argument to Strahmeier's request that we make new law on this issue. Id. at 33–34.

We decline Strahsmeier's invitation to make new law. Pennsylvania appellate courts have not recognized punitive damages as an appropriate remedy in orphans' court proceedings. This Court, as an intermediate court, is not inclined to enunciate and approve such an expansion of punitive damage

doctrine. We note that the Probate, Estates and Fiduciaries Code ("PEF Code"), 20 Pa.C.S. § 101 et seq., does not authorize punitive damages as a remedy. Moreover, because our Supreme Court has not addressed the precise question, we lack the benefit of direct guidance on this issue. We note that a case from the Court of Appeals for the Third Circuit predicted that our Supreme Court would not permit their recovery.[12] See Packard v. Provident Nat'l Bank, 994 F.2d 1039 (3rd Cir. 1993) (court of appeals predicted Pennsylvania would not authorize the award of punitive damages in orphans' court matters); Accord In re Corestates Trust Fee Litigation, 39 F.3d 61 (3rd Cir. 1994) (same). Therefore, we affirm the appeal docketed at 1162 WDA 2017.

Appeal docketed at 1162 WDA 2017 is affirmed. Appeal docketed at 1163 WDA 2017 is affirmed.[13]

Judgment Entered.

_____

[12] While we are not bound to follow federal law:

> [o]ur law clearly states that, absent a United States Supreme Court pronouncement, the decisions of federal courts are not binding on Pennsylvania state courts.... However, whenever possible, Pennsylvania state courts follow the Third Circuit [Court of Appeals] so that litigants do not improperly "walk across the street" to achieve a different result in federal court than would be obtained in state court.

Feleccia v. Lackawanna College, 156 A.3d 1200, 1214 n.6 (Pa. Super. 2016) (quoting NASDAQ OMX PHLX, Inc. v. PennMont Secs., 52 A.3d 296, 303 (Pa. Super. 2012) (citations omitted)), appeal granted, 175 A.3d 221 (Pa. 2017).

[13] Strahsmeier's Application to Amend Designated Appellant's Second Brief filed on November 30, 2018, is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/10/2019